■ Evanston Insurance Company, Appellant, v Po Wing Hong Food Market, Inc., Defendant and Third-Party Plaintiff-Respondent. Sterling & Sterling, Inc., Third-Party Defendant-Respondent. [800 NYS2d 396]—

Order, Supreme Court, New York County (Edward H. Lehner, J.), entered July 27, 2004, which, to the extent appealed from, denied plaintiff's motion for summary judgment, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of plaintiff in the amount of $38,572, with statutory interest from March 14, 2003.

Plaintiff made a prima facie showing of its entitlement to summary judgment as a matter of law by submitting the subject insurance policy, the audit statement and an affidavit from its vice-president, which demonstrated that defendant owed it an additional $38,572 pursuant to the audit conducted after expiration of the policy in accordance with the terms of the policy.

Contrary to the motion court's finding, defendant's submissions fail to raise a triable issue of fact as to whether the policy was obtained at defendant's request and what payments were actually made thereon. In his affidavit, defendant's president does not dispute that he relied on his insurance broker, third-party defendant Sterling & Sterling, to obtain coverage on defendant's behalf, and Sterling concedes that the policy relied on by plaintiff is the policy it obtained for defendant. Defendant is bound by Sterling's actions in obtaining the policy on defendant's behalf (*see Crimi v National Life Ins. Co.*, 1 AD3d 309, 310 [2003]). The insurance binder on which defendant relies predates both the notice of nonrenewal of insurance sent to defendant by plaintiff on October 19, 2001 and the policy subsequently issued by plaintiff. The policy is the controlling document (*see Ford Motor Credit Co. v Atlantic Mut. Ins. Co.*, 294 AD2d 206 [2002]).

The claim of defendant's president that he believed he had purchased a policy with a $38,000 premium for estimated sales of $15,000,000 is belied by the evidence of the terms of the policy defendant obtained from Markel Insurance Company the previous year. The Markel policy, like the policy obtained from plaintiff, was issued based upon estimated gross receipts of $9,100,000, with a premium audit to be conducted after expiration of the policy. It is undisputed that that audit revealed gross receipts of $17,347,987, resulting in a "gross earned premium"

of $66,790, and a balance, after crediting defendant for its payment of the initial premium, of $25,455, which was paid by defendant through a finance company arranged for by Sterling.

The record indicates that the initial $49,049 premium for the instant policy was paid by the finance company on defendant's behalf, and that the premium audit revealed actual gross receipts of $16,256,268, resulting in a gross earned premium of $87,621 and a balance, after crediting defendant for its payment of the initial premium, of $38,572. By paying the initial premium and permitting plaintiff to conduct the audit, which defendant's president does not deny, defendant ratified Sterling's actions in obtaining the policy (*see Paramount Ins. Co. v Brown*, 205 AD2d 464, 465 [1994]). Concur—Saxe, J.P., Ellerin, Sweeny and Catterson, JJ.